for March 9th. I'm here in Miami, and Judge Brasher and Judge Shoflat are in Jacksonville. The first case we have on the calendar is United States of America v. Ronald Latson. Each side has 15 minutes. You should be advised that the panel is well familiar with the facts of the case, so please use your time wisely. Thank you. Let me proceed. Thank you, your honors, and good morning. Allison Huayardo on behalf of Mr. Latson. Florida cannabis is plainly broader than federal law. The Federal Controlled Substances Act defines marijuana to require at least a certain THC concentration, but Florida, at the time of Mr. Latson's convictions, his cannabis convictions, included any cannabis regardless of THC concentration. The plain language of the Florida and federal statutes thus establishes that Florida is plainly overbroad. The dispute in this case concerns which version of the Controlled Substances Act are we looking at, and is it plain that we are looking at the Controlled Substances Act, the Federal Controlled Substances Act, in effect today? And it is plain, but before I address that point, there's just two points I do need to bring to this court's attention. As the court's aware, this court has heard an argument in Eugene Jackson on this timing question. Nevertheless, I'm prepared to address today why we are plainly reading, why the plain text of the Armchair Criminal Act establishes that it's the Controlled Substances Act that applies today that is the correct reading. And the second thing I wanted to just bring to the court's attention at the outset, and I regret this delayed realization on my part, but we have addressed this in our 28-J last week, that there is an additional aspect of overbreath with respect to Florida cannabis versus federal marijuana, and that is the mature stocks. I just wanted to alert the court to that, that that overbreath... Can I ask you a question? So, on the first issue, not the mature stocks issue, but the first issue, I'll just tell you, I tend to agree with you that there's error, okay? I tend to agree with your position on that, and I'm speaking only for myself, but the thing that I'm struggling with is the argument that this is plain error, and you're proceeding under the idea that it's clear on the face of the statute. Could you just... I mean, for me, it would just be helpful if you kind of focused on that and explained how that meets the clear... How what we have here meets the clear on the face of the statute test that we have for plain error. Yes, Your Honor. And I'm going to point to two things in particular. I'm going to point to both the plain text and to this court's already existing precedent. And specifically, I'm addressing what federal law are we looking at, and in this instance, we're looking at the Armed Criminal Act, 924E2A2, which includes as predicate conviction state convictions for a, quote, controlled substance, as defined in section 102 of the Controlled Substances Act. That is just a cross-reference to the Controlled Substances Act, and we know it refers to the current Controlled Substances Act because there's no including any look back. There's no language that tells us to look back at some earlier point in time. Instead, what Congress did is by cross-referencing the Controlled Substances Act, which it constantly updates. Congress changes the Controlled Substances schedules, as does the federal government. By cross-referencing the schedules that are constantly updated, that showed that Congress clearly intended to apply the current updated law. More than that, the opposite reading... But do we look at the schedule at the time of the actual offense, or do we look at it at the time of sentencing? Your Honor, we look at it at the time of sentencing. And the reason we do that is because, as this court has already recognized, the general rule is that barring an ex post facto violation, a defendant should be sentenced under the law and at the time of his sentencing. We address cases in our 28-J letter that we filed this week on that, and Sweeting, which we had already cited in our initial brief, is an illustration of this general rule. Congress had changed the Armed Pro-Criminal Act after the defendant's offense to include a different occasions provision. That was applied to that defendant. In fact, in Sweeting, the court said the act presently provides and highlights the fact that the Armed Pro-Criminal Act had now included a different occasions provision. And Congress legislates knowing this general rule. So just as the current version of the Armed Pro-Criminal Act defines who qualifies for a 15-year mandatory minimum, so too does the version of the Controlled Substances Act that Congress has incorporated into the Armed Pro-Criminal Act. And I want to go back to the statutory text if I could just for a minute, because thinking through what the text would mean if the opposite conclusion were to hold. Let's say, for example, somebody, if we were to read the statute to refer back to the Controlled Substances Act at the time of the state offense, the state prior, that would lead to this absurd result. Let's say a defendant is convicted in state court of a substance that is not yet federally listed, but it is listed today. That defendant would escape the 15-year minimum mandatory penalty by the happenstance that his state listed the substance before the federal government did. That would mean state law would effectively defeat the Armed Pro-Criminal Act. And I feel fairly confident Congress did not intend that. So everything that is plain about the text of 924E2A2, this court's case law, applying the Armed Pro-Criminal Act, its existing precedent already establishes that it is plain that we look at federal law at the time of sentencing. So let's say I agree with you on that. So I agree with you that this argument that's being raised in Jackson, it's going to be probably resolved in there, it goes your way. And so then you've got Shamu on your side. I was on that panel, I don't know how to pronounce it. Shamu or Shamu is on your side. Jackson, I think that's the case, right? That was argued. That comes out your way. So the government really doesn't have any arguments about, well they may, but that they've made, that this was an error. So the face of the Armed Pro-Criminal Act is a serious drug offense, right? We have to look not to the Armed Pro-Criminal Act, we have to look to the Controlled Substances Act, and then we have to look to the schedules, and then we have to compare that with Florida law, right? That's the analysis we have to do to rule in your favor. Yes, Your Honor, we look at the Armed Pro-Criminal Act, and in this instance we're looking at the Controlled Substances Act itself, just because Congress itself is the one. Oh, we don't have to look at the schedules. Correct. The marijuana definition is found in Section 802 itself. Okay, so what's your best case that that kind of analysis fits the sort of plain on the face of the statute, plain error standard that we have? Yes, Your Honor, this court has, and we cited Bankston in our briefs, Bankston is a case where this court has found plain error based on the statutory language itself. And I'll point to the Ninth Circuit, Summerlee has found plain error in this instance based on comparing an Arizona statute that also did not have a THC concentration requirement. And more than that, Your Honor, we had cited... I'm sorry, what case was that? I said that too fast. Bautista, which is the Ninth Circuit decision, I believe we cited it on page six of our reply brief. But more than that, Your Honor, as I mentioned, so we did start with the plain text, and I think that is where we start. But more than that, the fact that this court has already recognized the general rule that federal law applies at the time of the defendant's sentencing, I think we could apply that general rule to this context. And the United States v. Heath is a plain error case, which I cited in a 28J, where this court has taken its general rules and applied it to another case. And just to make sure I have addressed this point as well, Your Honor, and there's also just the plain comparison of comparing then on the current federal law versus Florida law, they are plainly... Florida is plainly overbroad. I think that also establishes plain error just based on the plain language that Florida did not require a THC concentration at the time of Mr. Brasher's conviction. So unless the court has any additional questions, answer any further questions during rebuttal. Thank you. You have time remaining for rebuttal. Thank you very much. Counsel for the government. Good morning, Your Honors, and may it please the court, Holly Gersh on behalf of the United States. I have the same problems that Judge Brasher does. About the issue of plain error? Yeah. So this is... Let me be clear. There are two things that are at play here. One is, which version of the Armed Career Criminal Act applies? And we do not dispute that that would be the version of the Armed Career Criminal Act that's in place at the time of either the offense or the sentencing for the federal offense. But what we're talking about here is when Congress drafted the Armed Career Criminal Act, and they said as defined in the Controlled Substance Act, what version were they talking about at that point? And that is what is not plain. And we know it's not plain because this court has never addressed that issue. All of the cases cited by my friend are cases that talk about what version of the Armed Career Criminal Act apply. And the Tenth Circuit has said that it's the time of the federal offense. And even the Sixth Circuit in Williams where it said that it was at the time of the federal sentencing. So the error here is not plain because it's not clear or obvious which version of the federal stat... of the federal controlled substance... You agree that nothing in the ACCA is an element of the offense? I'm sorry? Nothing in the ACCA is an element of the offense? That is correct. It's strictly sent... It is a sentencing statute. But we're not contesting about the version of the Armed Career Criminal Act. We're talking about which version of the Controlled Substance Act is a federal offense. I realize the court doesn't have to reach this issue here because we're on plain error review, but on the idea that it wouldn't be a comparison to the version of the Controlled Substance Act at the time of the state conviction. This court looks at McNeill. The Supreme Court applied a backward-looking approach to determine if a state offense had at one point been subject to a penalty of 10 or more years, and later the state changed the penalty provision so that the offense was no longer punishable by 10 years. And the Supreme Court said this is a backward-looking analysis. You look at the offense at the time that the state offense was committed because that reflects the seriousness of the offense at that time. And so it doesn't make sense to say an offense was serious at the time that it was committed because it was a controlled substance offense under both state and federal law. But somehow it becomes less serious because later the offense changes. And I would point to the district court's analysis in Volt. I think that's a very well-reasoned opinion. And one of the reasons that the court in Volt said that you schedule at the time of the state conviction is so there's two types of serious drug offenses. One is a federal offense that violates the Controlled Substance Act or a state offense that involves manufacturing distribution or possession with intent to distribute a controlled substance as defined in the Controlled Substance Act. So under the federal statute, we know we look back to what the Controlled Substance Act said at the time of the federal conviction. So in this case, let's say that this had been a federal conviction for marijuana. It would still qualify as a federal, as a ACC. But that's just because the statutory text is different, right? I mean, the statutory text in the federal context says these federal crimes are serious drug offenses. But in the state conviction context, it says state crimes that ban the same things as federal law are serious drug offenses, right? Right, but they did at the time that they committed the offense. Yeah, let's just let's assume that like 30 years ago, this is a ridiculous hypothetical for the purposes of a hypothetical. Let's assume that 30 years ago, Florida defined cannabis to include bananas. So it's just illegal in Florida to sell or distribute bananas under their definition of cannabis and that this guy was convicted of that. And let's just say that at the same time, that's what the federal law said. It was just illegal under federal law to do that. And then federal law changed. And then Florida law too changed. And then he commits a gun offense. Why would we enhance his penalty? Because, so let's take a step back and say, why is a serious drug offense included as a predicate offense under the Armed Career Criminal Act? Because they're trying to weed out the most offenders who are likely to bring a gun to an infraction and use it. And if at that time, it was illegal under both federal and state law to sell bananas, then when you were committing that infraction, you were committing a serious infraction that would make it more likely that you were going to bring a gun to protect your bananas. I mean, I know it's a little bit silly when you're talking about bananas. Well, let's just assume instead of doing this sort of half step that the federal government did and said, you know, we're going to allow hemp, that federal law just changed and said marijuana is legal now, right? And Florida law just changed and said marijuana is legal now. And then he is brought up on charges of having a gun. Why should we say that even though the federal law has changed to make marijuana legal and the Florida law has changed to make marijuana legal, that we're going to look back at his marijuana convictions when determining how to sentence him for a new gun conviction 20 years later? For the same reason, Your Honor, and it's because when he committed that marijuana offense, it was a serious crime under state and federal law. And therefore, the type of offense at the time that he committed it, where it would be more likely that this person would have been engaged in armed drug dealing. And so we're talking about the seriousness of the offense in order to determine if this is the type of person who's more likely to bring a gun to a drug deal and use it. And it doesn't change. Counsel, we do look back. District courts look back all the time when they do sentencing, don't they? When they look at the guidelines, they look at a prior criminal history. That's correct. I mean, this is not unusual, is it? It's not unusual. You know, the distinction is that, you know, in the sentencing context, you apply, generally apply, like the guidelines that exist at the time of the sentencing. But when you're talking about the prior convictions, I agree with Your Honor that you often look back at the offenses that were committed in the past. So right now, I mean, your request to us, and you know, I think this may be just resolved by the other panel, but I mean, you're asking us to say, and this is on plain error review, so you're asking us to say, look, you know, however we would resolve this issue ourselves, it's certainly not a plain error for the district court to have done this. And I mean, this wasn't presented, but theoretically a district court could have said, look, I'm going to look at the Florida law, the federal law at the time that the state conviction occurred instead of the federal sentencing law at the time of the sentence, right? That's what you're saying. Yeah, I mean, I would phrase it this way. You wouldn't expect a judge to, on their own, with no assistance from the parties, say, wait, this is the federal version that applies, this is the version of the schedule that applies, I have to compare it to this and all of this analysis and get to the result that my friend is asking the court to reach here. And I certainly think that's the case given the divergence of the circuit precedent in the court said this isn't plain or obvious. I mean, Congress could, I'm sorry. Go ahead, Judge Shultz. Don't we do that all the time in plain error analysis? You look to see what the law is at the time, whether you even think about it. You're arguing that the judge wouldn't have thought about it. Well, I think, I guess my point is that the... That doesn't matter whether the judge would have thought about it under the plain error doctrine is what I'm saying. It doesn't matter, except for the fact that the standard for plain error review is that it has to be obvious. Almost by definition, every time we have a plain error case, the judge missed the... Right, that particular judge... Missed the plain part. That's correct. And so we don't say, well, he missed the plain part, that's okay. Right, but I think, I guess my point was it has to be, for it to be plain error, it has to be clear and obvious under federal law. And the argument is that the statute is pretty clear. What do you say about this problem, which goes to Judge Joflat's point? So we have this case Jackson out there that's going to be resolved. Let's just assume that that comes out against your position. The way I understand plain error review from the Supreme Court is that we look at whether something was plain error at the time we do the appellate review. So let's assume Jackson comes out and rejects this argument that you're making. We have to factor Jackson then into our plain error review, right? That's correct. Okay, so... That was partly why we moved to stay this morning. Right, right. So let's just assume then, for purposes of... It would help me out, I guess. You know, if you win Jackson, then we don't have to worry about this at all, right? If you lose Jackson, this argument goes away. Well, let me put a caveat there. So in Jackson, the issue as phrased by the question articulated to the parties in Jackson was, which version of the federal schedules do we look at? The federal schedule in place at the time of the state conviction or at the time of the state offense... Or I'm sorry, at the time of the federal offense. And so under either of those approaches, we win in this case because it's the sentencing. So it's possible that Jackson might not reach the issue here because it could say at the time of the state offense or at the time of the state sentencing. And either of those would, we would... And counsel, just so it's clear to both of you, when Jackson comes out, we would obviously ask for supplemental briefings. Of course, your honor. So let's just assume, just for purposes of my question, because this is what I'm hung up on, that Jackson comes out and says, yeah, you look at it at the time of the sentencing and that's what matters. Even though you're right, that's not the question they ask in that case. Let's just assume that's what they say. Then I think, then my question is still, does this necessarily meet the standards for plain on the face of the statute, given that one has to look at the statute, the ACCA, then one has to look at the Controlled Substances Act, then one has to do a comparison between the Controlled Substances Act and Florida law at the time of conviction? Have we ever, I mean, I guess the way to ask this question is, would you address the proposition that that meets plain error review? So I think what the court is maybe getting at, and correct me if I'm misunderstanding the question, is does this create a realistic probability that the defendant was actually prosecuted for an offense that- Well, right. Well, I mean, there's more to it, I suppose. The way I view the categorical rule is there's more to it than just looking at the face of the statute to determine whether a crime meets the serious drug offense standard. I think that's correct, Your Honor, and I think that in footnote three of Shamu, when the court says the first step is identifying a discrepancy between the statutory language, then that, but more is likely required. And since this court hasn't addressed what that more is, I think that you would have to show that there's actually prosecutions for cases in which a defendant is prosecuted for an offense under state law that would not have qualified as an offense, that would not qualify as an offense under federal law. Let me ask you to address this hypothetical that's not a hypothetical because it actually happened to me. So there's a sentencing where the crime of violence prong is implicated. So the categorical rule applies to crime of violence as well as serious drug offense. And the predicate offense is New Mexico stalking. And the question arises after the sentence is imposed, and that predicate offense is not challenged, no one thinks that stalking is not violent, that hey, wait a minute, if you look at the elements of New Mexico stalking, which no one did, you find that they don't necessarily satisfy the crime of violence. Is that a plain error, or is that just an error in your mind? I think it would just be an error. And I want to point the court to Vail Ballon and the fact that just because there are some hypothetical ways in which the statute can be violated that doesn't necessarily create the realistic probability you have to show. And I acknowledge Ramos in the fact that in some cases the statutory language can be so clear that it would create that realistic probability. And I think an example in this case is if the federal statute, if the state statute says it's illegal to possess cocaine, and the federal statute exempted cocaine, you could look at that and say, obviously here there's a realistic probability that you're going to be prosecuted for cocaine. But when you're talking about things like hemp or mature stalks of marijuana, absent some sort of exemplar prosecution that people are actually being prosecuted under Florida law for these types of offenses, I don't think that would meet the realistic probability test, and certainly not under plain error review. Unless the court has further questions that we'd ask that you affirm. Thank you, counsel, for your argument. Thank you. I wanted to address, if I could, three main points. My colleague has pointed out to other circuits' decisions, the Tenth Circuit decisions that have been cited by the government, neither of which addressed a change in the federal drug schedule. So they're an opposite. But I would note, for whatever it's worth, though, that the majority opinion in the published Tenth Circuit decision actually cited the schedules in effect at the time of the federal sentencing. But again, the Tenth Circuit did not address this issue. The Sixth Circuit did. But the Sixth Circuit, its timing decision aligns with our reading in terms of which version of the Controlled Substances Act you apply. Now, the Sixth Circuit's decision is unpublished. It did not find plain error. But this court's precedent for plain error is different than the Sixth Circuit. And let me unpack that, if I could. The Sixth Circuit was addressing the Supreme Court's decision in McNeil. And my colleague has addressed that as well. McNeil tells us, we look back in an armed court criminal case to determine what were the elements or the penalty there was a statutory maximum under state law at the time of the conviction. That's the state side of the equation. McNeil was not addressing a change in the federal law. There was no change to the Armed Court Criminal Act, not a change to the drug schedule. So in that sense, it's not on point. But more than that, our reading, our plain text reading of 924E2A2 is consistent with McNeil. And here's how. And this goes back to the example that I discussed in the opening. If a defendant is convicted under state law of a substance before that substance is federally listed, but that substance were listed today, the reading of a look back would mean that defendant, even though Congress has listed that substance today, would not qualify for the Armed Court Criminal Act. That's giving credence to a state law beating the federal government to listing a substance and defeating the Armed Court Criminal Act. That is not consistent with McNeil. Instead, the plain text reading is that we apply the Controlled Substances Act in effect today. This court's precedent already says, and as the court alluded to earlier, the Armed Court Criminal Act is a sentencing provision. That further underscores, under this court's precedent, we apply the law in effect at the time of the defendant's sentencing. So here, where Congress has made the choice that a substance is not federally listed or has changed the definition, that is the definition we apply today. And so then turning finally to the reasonable probability argument, if I could just briefly, this is the fact that both the state and then, excuse me, the federal government and then later the state has changed their marijuana definitions. This is a real thing. We're not talking about a hypothetical legal imagination. At the time Mr. Latson was convicted in Florida, marijuana or cannabis included any THC concentration. The prosecutor did not have to show any threshold THC concentration. But under federal law today, which is the appropriate law we're looking at, there is a THC requirement. No legal imagination is required. The plain text under this court's precedent establishes that Florida is overbroad. Thank you. Thank you both. And again, we'll ask for supplemental briefing when Jackson comes out. Thank you both for your arguments today.